THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
EARL N. HAYES, Appellant.

(County Court, Ulster County, March, 1910.)

Highways — Law of the road and rights of traveler:   Speed regula-.
tions — Signs:   Statutory offenses — Punishment.

> The object of section 291 of the Highway Law is to make cer-
> tain uniform motor vehicle speed regulations applicable to the
> entire State as a substitute for the many differing rules in each
> locality.

> The statute requires the erection of signs in all areas through-
> out the State in which the speed upon the public highways is
> restricted to ten miles an hour; in all unmarked portions of
> the road inside any city or village the speed may be fifteen
> miles an hour and outside twenty miles an hour.

> An information charging defendant with running a motor
> vehicle upon a closely built-up portion of Main street, in the
> village of Ellenville, at a speed exceeding ten miles, viz., fifteen
> miles an hour, in violation of section 291 of the Highway Law,
> but which fails to allege the erection of a sign with the inscrip-
> tion required by statute at the place where the excessive speed
> was to be reduced, does not allege the commission of a crime.

APPEAL from a judgment entered upon the verdict of a
jury convicting the appellant for the violation of section 291,
article XI, chapter 25, of the Consolidated Laws of the State
of New York, and fining appellant therefor the sum of
twenty-five dollars.

William D. Brinnier, for appellant.

William D. Cunningham, district attorney, for respondent.

CANTINE, J.   The information charged the appellant with
running a motor vehicle upon a closely built-up portion of
Main street, in the village of Ellenville, at a speed exceeding
ten miles an hour, viz., fifteen miles an hour, in violation
of section 291 of the Highway Law.

A motion was made to discharge the appellant upon the

ground that the information did not charge a crime, which motion was denied, and an exception taken thereto.

At the close of the testimony, a motion was made to discharge the appellant, upon the ground that the evidence did not show the commission of a crime. Upon the denial of this motion an exception was taken. The point involved in each motion was whether it was the duty of the authorities of the village of Ellenville to erect signs bearing the inscription named in the statute, at the places where speed was to be reduced.

The contention of the local authorities is that the statute only required the erection of signs in towns, and then only in such sections as are closely built up and within one-half mile of a post-office.

The claim of the appellant is that the requirement as to signs is of general application to all the highways in the State, whether in city, village or town, and that each area of reduced speed should be marked as commanded by the statute.

The information and the evidence presented show this fundamental difference of statutory construction.

If the local authorities of Ellenville are not required to erect the statutory signs, then the information is correctly drawn and the evidence presented below proves the commission of a crime. On the other hand, if such duty is imposed on the local authorities, a crime is not charged in the information and not proved upon the trial.

The following are the statutory provisions upon the subject: " No person shall operate a motor vehicle * * * upon any public highway where the territory contiguous thereto is closely built up, at a greater rate than one mile in six minutes, or elsewhere in a city or village, at a greater rate than one mile in four minutes, or elsewhere outside of a city or village at a greater rate than one mile in three minutes." § 291.

" ' Closely built up ' shall mean (a) the territory of a city, village or town contiguous to a public highway which is at that point built up with structures devoted to business, (b) the territory of a city, village or town contiguous to a public highway not devoted to business, where for not less than one-

quarter of a mile the dwelling houses on such highway average less than one hundred feet apart, and also (c) the territory outside of a city or village contiguous to a public highway within a distance of one-half mile from any post-office, provided that for a distance of at least one-quarter of a mile within such limits the dwelling houses on such highway average less than one hundred feet apart, and provided further that the local authorities having charge of such highway shall have placed conspicuously thereon signs of sufficient size to be easily readable by a person using the highway, bearing the words, ' Slow down to ten miles ' and also an arrow pointing in the direction where the speed is to be reduced." § 281.

The end sought by this law, reading it as a whole, is to make certain uniform speed regulations applicable to the entire State.

This is shown most clearly in section 281, wherein the words " Public highway " are defined to include, "Any highway, country road, state road, public street, avenue, alley, park, parkway, driveway or public place, in any city, village or town."

No more comprehensive language could be used to include all the highways within the State to which speed regulations were to apply.

" In construing the statute the evil to be prevented is to be ascertained and the new enactment is to be read in view thereof." People ex rel. Jackson v. Potter, 47 N. Y. 387.

This evil was plainly to substitute a uniform law in place of the many differing rules in each locality.

There are several reasons which lead me to the conclusion that the Legislature could not have contemplated such an absurd result as to have limited the erection of signs to within one-half mile of a post-office, and made no provision for the same object upon all the other highways of the State.

The construction of the statute which compels the erection of signs upon all highways where speed is to be reduced is consistent with its general object and the evil sought to be corrected. Violations of speed regulations are not crimes *mala in se;* they involve no moral turpitude. The Legislature, therefore, has directed that, before one can be

held for violations of this prohibited act, a notice shall be given by means of a sign; and, if it be plainly readable and contains what the statute says it must, it then becomes actual notice, whether seen or not.

Thus read, we have a uniform, harmonious statute, consistent in all its parts and applicable to the entire State. But, if it be not so read, what is the effect of the language used?

The fact that the Legislature has required signs to be erected under any condition points logically to the conclusion that certain conditions did exist requiring the presence of signs. It is a recognition by the Legislature of the necessity of notice under certain conditions. The conditions of the excepted cases requiring notice differ in no respect from the conditions in which notice is required.

This conclusion is based upon the definition of the words, " Closely built up," contained in the statute.

The language of subdivisions b and c, of paragraph 3, is " where for not less than one-quarter of a mile the dwelling houses on such highway average at least one hundred feet apart." When that situation exists in a town, within one-half mile of a post-office, if the narrow construction be adopted, notice must be given; but, in precisely the same situation and condition in a city, village or town (outside the limit of one-half mile of a post-office), no notice is required.

Such a construction does violence to the intelligence of the framers of this statute. It would seem fair to assume that, if the framers of the statute required notice to be given under any condition, they intended to require a like notice under all like conditions.

That the conditions are similar, is further shown by the fact that the statute requires in all the areas of restricted speed defined in either subdivision a, b or c, precisely the same speed, viz: Not more than one mile in six minutes, or ten miles an hour. § 291.

No reason can be given to explain why in one case notice would be given and not in the other. All the reasons which make notice necessary in any case apply equally to

39

County Court, Ulster County, March, 1910.          [Vol. 66.

all the other cases under the statute. The power of observation does not diminish as a driver approaches the limit of one-half mile of a post-office. He can as well there determine the condition without signs as he can elsewhere.

If the erection of signs be limited to certain specified conditions within one-half mile of a post-office, there will be in. towns several areas of restricted speed in no respect differing as to density of population, which is the underlying reason for the reduction of speed, in only one of which signs are required to be erected.

In towns, the area of restricted speed is that portion devoted to business (a); that portion in which the dwelling houses are not more than one hundred feet apart for one-quarter of a mile (b); that portion within one-half mile of a post-office in which the dwelling houses are not more than one hundred feet apart, etc., (c).

It is apparent that, if the signs be only required within one-half mile of a post-office, the traveler might pass from an area in which notice had been given that speed was to be reduced immediately into another area of reduced speed, unmarked. He would have the right to assume, as he passed the last mark, that the area of reduced speed was ended, but find, when haled before a magistrate, that the statute had erected a trap into which he had innocently fallen.

The abrupt change of the subject-matter of subdivision c, from definition to mandate, points to error in punctuation. Down to the words, "And provided further," the statute deals solely with the creation of certain areas in which the speed is to be reduced. The subject-matter of definition ends here; the rule creating the area has been laid down; an entirely new subject-matter is now taken up, viz., the notice to be given the traveler upon entering this area of reduced speed.

The ordinary rule of punctuation requires the change of subject to be demarked by a period, rather than a comma. If marked by a period, the statute becomes plain; the definitions contained in a, b, and c, are ended; the new subject-matter, applicable alike to each, then begins.

These reasons lead to the conclusion that the statute requires the erection of signs in all areas throughout the State in which the speed is restricted to ten miles an hour.

Thus construed, the rules of the road become plain and easily understandable. They are: In all portions of the highways marked by signs in every part of the State, the speed is to be ten miles an hour. In all unmarked portions of the road, if in a city or village, the speed is to be fifteen miles an hour; if in a town, twenty miles an hour.

The information did not allege this material fact, the presence of the statutory signs, and for that reason failed to allege a crime. The evidence as to the erection of a sign at the place where the excessive speed is charged shows that the sign contained only the words, " Slow down to ten miles," but does not disclose that the sign contained, "An arrow pointing in the direction where the speed is to be reduced."

The statutory requirements were, therefore, not met. Neither the words nor the arrow could be omitted.

The motion for the appellant's discharge should have been granted below. A new trial cannot be directed, because the information does not charge a crime.

Judgment reversed.